IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARNETTA ANDERSON**, | : | CIVIL ACTION NO. 3:12-CV-2278 |
| Plaintiff, | : | (Chief Judge Conner) |
| v. | : | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | : | |
| Defendant | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter are the complaint (Doc. 1) of plaintiff Darnetta Anderson ("Anderson") seeking review of a decision of the Commissioner of Social Security[1] ("Commissioner") denying Anderson's claim for social security and disability benefits, the Commissioner's answer thereto (Doc. 7), and the transcript (Docs. 8, 9, 10) of the administrative proceedings. The issues are fully briefed, (Docs. 13, 15), and the matter is ripe for review. For the reasons that follow, the court will affirm the Commissioner's decision.

---

[1] Michael J. Astrue was the Commissioner of Social Security when the instant action was filed against him in his official capacity. Astrue subsequently vacated his position, and Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. See Official Social Security Website, http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm (last accessed March 23, 2014). Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action. FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

**I.     Factual and Procedural History**

Darnetta Anderson was 29 years old on July 20, 2007, when she slipped, fell, and injured her knee.  (Doc. 8-2 at 35).  She subsequently underwent three knee surgeries.  (Id.)  She had previously worked as a corrections officer, certified nursing assistant, and teacher's assistant.  (Id. at 50, 52).  She has two children.  (Id. at 37).

Anderson applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 5, 2009.  (Id. at 16).  Anderson alleges that various physical and mental impairments render her totally disabled and unable to engage in any gainful employment.  Anderson alleges that she suffers from the following impairments which substantially limit her ability to do basic work activities: left knee pathology, hypertension, asthma, migraines, irritable bowel syndrome, high cholesterol, arthritis, anxiety, and depression.  (Id. at 35-36).  The Bureau of Disability Determination denied Anderson's initial application for benefits on January 15, 2010.  (Id. at 16).  The administrative law judge ("ALJ") thereafter held a hearing and heard testimony from Anderson and a vocational expert.  (Id. at 31-57).

During the hearing, Anderson testified that she has problems sitting or standing for long periods.  (Id. at 38).  She testified that she spends the majority of her day with her legs elevated above her heart.  (Id. at 38-40).  Anderson stated that she takes Lyrica and oxycodone for the pain.  (Id. at 41).  Anderson testified that she experiences side effects from this medication, such as dizziness, constipation, and

diarrhea. (Id. at 42). She stated that she uses an inhaler for asthma, but continues to smoke cigarettes. (Id. at 42, 44). She claimed that she suffers from heart palpitations related to her high blood pressure, and also suffers from gout. (Id. at 43). She testified that she helps get her children ready for school and helps them with their homework, but cannot do chores around the house. (Id. at 44-46). Anderson uses a riding cart to shop at Walmart and states that she cannot stand for more than fifteen minutes and cannot walk for more than five. (Id. at 46-47). She claimed that she can lift a gallon of milk but would not be able to walk with it. (Id. at 47). She testified that she takes Paxil but is not otherwise being treated for anxiety and depression. (Id. at 47).

After the hearing, the ALJ issued an unfavorable decision finding that Anderson was not disabled. (Id. at 13-30). On September 28, 2012, the Social Security Appeals Council denied Anderson's request for review of the ALJ's unfavorable decision. (Id. at 2-8). On November 15, 2012, having exhausted her administrative remedies, Anderson commenced this civil action to challenge the decision of the ALJ pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Standard of Review

District courts have jurisdiction to review decisions of the Commissioner denying disability insurance benefits or supplemental social security income based upon 42 U.S.C. § 405(g). See id. ("Any individual . . . may obtain review of [any final decision of the Commissioner] by a civil action commenced within sixty days after the mailing to him of such decision."). When considering such an appeal, district

courts have plenary review of all legal issues decided by the Commissioner. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). Judicial review of the Commissioner's findings of fact is much more limited: the test is deferential and tasks the court to determine whether the factual findings are supported by "substantial evidence." 42 U.S.C. § 405(g) ("The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."); see Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where . . . findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); see also Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," but less than a preponderance, of the evidence. Brown, 845 F.2d at 1213 (citing Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason, 994 F.2d at 1066).  The ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706–07.  Therefore, the district court must scrutinize the record as a whole on appeal. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

### III.   Sequential Evaluation Process

To receive disability benefits, social security claimants must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered to be "unable to engage in substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The ALJ employs a five-step process in evaluating DIB and SSI claims. 20 C.F.R. § 416.920(a)(4). The process requires the ALJ to query, in sequence, whether the claimant: (1) is engaging in "substantial gainful activity"[2]; (2) has an impairment

---

[2] If the claimant is engaging in substantial gainful activity, the claimant is not disabled under the Act and the Commissioner proceeds no further. Substantial gainful activity is work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 416.972.

that is "severe"[3] or a combination of impairments that is severe; (3) has an impairment or combination of impairments that meets or equals the criteria of a "listed impairment" or "listing";[4] (4) has the "residual functional capacity" ("RFC") to return to his or her past work;[5] and (5) if not, whether he or she can perform other work in the national economy. Id. The burden of proof rests with the claimant throughout the first four steps and with the Commissioner at step five. Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).

---

[3] The determination of whether a claimant has any severe impairments at step two of the sequential evaluation is a threshold test. See 20 C.F.R. § 416.920(c). A claimant who does not have an impairment or combination of impairments which "significantly limits [his or her] physical or mental ability to do basic work activities" is not disabled, and the sequential evaluation proceeds no further. Id. "Basic work activities" include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. Id. § 404.1545(b). Mental or non-exertional abilities include the ability to understand, carry out, and remember simple instructions, and appropriately to supervision, coworkers, and work pressures. Id. § 1545(c). Once a claimant establishes an impairment, or a combination of impairments, that is severe, all medically determinable impairments, whether severe or non-severe, may be considered in the subsequent steps of the sequential evaluation process. Id. § 416.923.

[4] A listed impairment is one that appears in the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments). If the claimant has an impairment, or any combination of impairments, that meets or equals a listed impairment, the plaintiff is disabled. Otherwise, the sequential evaluation process proceeds to step four.

[5] If the claimant has the RFC to do his or her past relevant work, the claimant is not disabled and the sequential evaluation process ends.

At step four, the Commissioner determines the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). A claimant's RFC represents his or her maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). The RFC assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545, 416.945; Fargnoli, 247 F.3d at 40 (defining RFC as that which an individual is still able to do despite the limitations caused by his or her impairment(s)). If the claimant does not have the RFC to perform his or her past relevant work, or the claimant has no past relevant work, the burden at step five shifts to the Commissioner to prove that the claimant can perform other work in the national economy. See Kangas, 823 F.2d at 777 (citing 20 C.F.R. § 404.1520(f)).

The ALJ in the matter *sub judice* conducted an evidentiary hearing and took testimony from the claimant and a vocational expert. The ALJ applied the sequential evaluation process and concluded that Anderson is not disabled and thus not entitled to disability benefits. In step one, the ALJ found that Anderson had not engaged in substantial gainful activity since July 20, 2007, the alleged onset date of her disability. (Doc. 8-2 at 18). In the second step, the ALJ found that Anderson suffers from the following severe impairments: asthma, irritable bowel syndrome, arthritis, left knee pathology, and migraines.[6] (Id.)

---

[6] The ALJ observed that Anderson also alleges disability due to hypertension, gout, depression, anxiety, and high cholesterol, but concluded that those impairments do not cause more than minimal limitations in Anderson's functioning and are thus non-severe. (Doc. 8-2 at 18-19).

Next, in step three, the ALJ held that Anderson's impairments do not separately or in combination meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 20). The ALJ considered the criteria of listings within the musculoskeletal, gastrointestinal, and respiratory listing sections. Regarding the musculoskeletal listings, the ALJ determined that Anderson did not establish that she is unable to ambulate effectively. (Id.) The ALJ noted that Anderson stated that she needs a cane, but the medical evidence does not discuss her need for a cane after an adequate recuperation period following each of her three surgeries. (Id.) The ALJ determined that Anderson is able to sustain a reasonable walking pace over a sufficient distance, citing Anderson's ability to shop. (Id.) The ALJ's conclusions were largely based on concerns with Anderson's credibility: "[a]lthough she alleges ongoing extensive problems and the medical evidence indicates ongoing clinical findings, some physicians were at a loss as to why she was as debilitated as alleged, she changed physicians after not following through with recommended care, and she falls into one of these cases where she alleges that nothing works." (Id.) For these reasons, the ALJ concluded that Anderson's severe impairments neither collectively nor individually meet or equal a listed impairment. (Id.)

The ALJ determined at step four that Anderson is unable to perform any past relevant work, and assessed her RFC. (Id. at 20-25). The ALJ opined that Anderson has an RFC capacity to perform sedentary work, including the ability to lift, carry, push, and pull 10 pounds occasionally and slightly less than 10 pounds

9

frequently. The ALJ also determined that Anderson's work ability is subject to the following limitations: (1) she can stand and/or walk up to 2 hours per day; (2) she can sit at least 6 hours in an 8 hour day with a need for a sit/stand option; (3) she cannot push and pull with her left leg; (4) she can occasionally climb, kneel, crawl, and frequently balance, stoop, and crouch; (5) she should avoid concentrated exposure to pulmonary irritants such as dust, chemicals, fumes, gases, and temperature extremes; and (6) she needs a work environment that allows access to restroom facilities. (Id. at 20). In making this assessment, the ALJ explained how "claimant's statements concerning the intensity, persistence, and limiting effects" of her symptoms were not credible. (Id. at 21). Specifically, the ALJ cited the lack of evidence within the medical record for many of Anderson's claims, including the need to elevate her legs for at least half of every single day in 20 minute intervals. (Id.) The ALJ also cited the fact that at one point, a physical examination of her left knee indicated an almost normal range of motion and no neurological abnormalities. (Id. at 22). Based on Anderson's age, work experience, education, and RFC, in addition to the testimony of a vocational expert, the ALJ found that Anderson is able to perform some sedentary work and identified inspector, finish machine tender, and general clerk worker as possible occupations. (Id. at 25). The vocational expert opined, and the ALJ concluded, that these jobs exist in significant numbers in the local and national economies. (Id.) As a result, the ALJ concluded that Anderson is not disabled as defined by the Social Security Act, 42 U.S.C. § 401 *et seq*.

**IV.    Discussion**

In the instant appeal, Anderson alleges that the ALJ erred in (1) determining that Anderson's impairments or combinations thereof did not meet the criteria of one of the listed impairments in Appendix 1, specifically Sections 1.02 and 14.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (2) concluding that Anderson had the residual functional capacity to perform sedentary-duty work.  (Doc. 13).  The court will address each issue in turn.

**A.    Listed Impairments**

At step three of the sequential evaluation process, the ALJ must determine whether a plaintiff's alleged impairment meets or equals any listed impairment on the Commissioner's Listings of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); see 20 C.F.R. pt. 404, subpt. P, app. 1.  The purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  The Listings operate as a presumption of disability without further inquiry as to whether the plaintiff can actually perform his or her prior work or other available work.  Zebley, 493 U.S. at 532.  To satisfy a listed impairment, the plaintiff has the burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  Id. at 531; Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Anderson alleges that the ALG erred in determining that her impairments do not meet the criteria of Sections 1.02(A) and 14.09(A)(1) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  Section 1.02(A) provides:

> *Major Dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A.    Involvement of one peripheral weight-bearing joint (i.e, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b

Section 14.09(A)(1) provides:

> *Inflammatory arthritis*.  As described in 14.00D6.  With:
>
> A.    Persistent inflammation or persistent deformity of:
>
> 1.    One or more peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6).

The ALJ specifically determined that Anderson has not shown that she is unable to ambulate effectively.  (Doc. 8-2 at 20).  An inability to ambulate effectively means "an extreme limitation of the ability to walk; i.e., an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  20 C.F.R. pt. 404, subpt. P, app. 1 1.00(B)(2)(b)(1).  Individuals must be able to carry on activities of daily living and have the ability to travel without assistance to and from a place of employment or school.  Id. 1.00(b)(2)(b)(2).  Examples of ineffective ambulation include, "the inability to walk

without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Id.

The ALJ did not err in determining that the evidence presented by Anderson does not meet the definition of ineffective ambulation. The ALJ specifically noted that the medical evidence failed to establish that plaintiff continued to medically require a cane after she recuperated from surgery. (Doc. 8-2 at 20). The ALJ also explicitly found that Anderson does not require 2 canes to ambulate. (Id.) The ALJ cited Anderson's testimony that she is able to shop and drive and concluded that she should be able to bank and use public transportation independently. (Id.) The ALJ further determined that Anderson's allegations that she has difficult walking and must lean on a cart while shopping at smaller stores were not credible. (Id.)

Anderson claims that the ALJ erred in failing to credit Anderson's medical records indicating that, at times, Anderson required a knee brace, crutches, a rolling walker, and a cane to ambulate. (Doc. 13 at 6). Anderson claims that medical records also indicate that Anderson keeps a walker in her home and that she experiences pain with ambulation. (Id. at 6-7). Anderson also alleges that the ALJ erred in failing to credit Anderson's testimony that she requires a cane to ambulate and cannot walk more than five minutes at a time. (Doc. 8-2 at 46). However, the ALJ specifically stated that a review of the medical evidence

indicated that Anderson did not require a cane with the exception of recuperation periods following each of her three surgeries. (Id. at 20).

Furthermore, Anderson claims that the ALJ erroneously failed to rely on any contrary medical evidence when determining that claimant's testimony lacked credibility. (Doc. 13 at 9). In support, Anderson cites Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) for the proposition that "where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence."

In step three, the ALJ does not appear to discount Anderson's credibility as it concerns her subjective level of pain, but rather her ability to ambulate. However, it is true that the ALJ must provide an indication of the evidence which he rejects and the reasons for discounting such evidence. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). "[A]n ALJ may not reject pertinent or probative evidence without explanation." Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-707 (3d Cir. 1981).

The ALJ's reasons for rejecting Anderson's testimony concerning her ability to ambulate are clear: the ALJ explained that the medical evidence indicates that "some physicians were at a loss as to why she was as debilitated as alleged, she changed physicians after not following through with recommended care, and she

14

falls into one of these cases where she alleges that nothing works." (Doc. 8-2 at 20). The ALJ further discussed Anderson's lack of credibility in step four, where he pointed to medical evidence indicating that she has the ability to walk, that she possessed a normal range of motion in her left knee, and that she was, at times, non-compliant with physical therapy. (Id. at 21, 22). The ALJ also discussed the paucity of evidence concerning Anderson's ambulatory inabilities and the fact that Anderson testified that her pain can be managed with medication. (Id. at 21-23). Upon review of the record, the court finds that substantial evidence supports the ALJ's conclusion that Anderson's impairments fail to meet or equal the criteria of listings 1.02(A) and 14.09(A)(1).[7]

### B. Residual Functional Capacity

Anderson further claims that the ALJ erred when he concluded that she has a residual functional capacity to perform sedentary-duty work. Specifically, Anderson highlights the vocational expert's testimony that Anderson would not be capable of maintaining full-time employment if she had to be off task for an hour

---

[7] Anderson further alleges that the ALJ failed to consider the extent to which her obesity exacerbated her impairments. (Doc. 13 at 7-8). Anderson cites Diaz v. Commissioner of Social Security, 577 F.3d 500, 504 (3d Cir. 2009) for the premise that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." However, in that case, the ALJ recognized the claimant's obesity as a severe impairment during step two but failed to consider its impact at step three. 577 F.3d at 503. In the case *sub judice*, Anderson does not contend that the ALJ should have considered her obesity as a severe impairment under step two, and does not cite to any medical evidence discussing the severity of her obesity. Thus, the ALJ did not err in failing to consider whether Anderson's obesity exacerbated her impairments.

per day due to the need for her to elevate her legs. (Doc. 13 at 11). Anderson testified at the hearing that she needs to elevate both of her legs for approximately half of the day in 20 minute intervals. (Doc. 8-2 at 39-40).

However, the ALJ did not consider this aspect of the vocational expert's testimony because he specifically found that Anderson's assertions concerning her need to elevate her legs were not credible; indeed, the medical evidence of record makes no mention of this limitation. (Id. at 21). Thus, the ALJ's decision to reject this testimony in his assessment of Anderson's residual functional capacity is reasonable.

## V.    Conclusion

For the reasons stated herein, the court will affirm the decision of the Commissioner. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      March 24, 2014